UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN JACOBSON,

                Plaintiff,                CIVIL ACTION NO. 10-13046

           v.                      DISTRICT JUDGE AVERN COHN

DEBRA SCUTT, HAYES, PATINO,        MAGISTRATE JUDGE VIRGINIA M. MORGAN
and CATHCART,

                Defendants.
_____/


**REPORT AND RECOMMENDATION TO**
**GRANT IN PART and DENY IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D/E #12)**


**I. Introduction**

      This is a *pro se* 42 U.S.C. § 1983 action in which the plaintiff, an inmate in the custody

of the Michigan Department of Corrections (MDOC), alleges that the defendants deprived

plaintiff of his rights under the United States Constitution by subjecting him to cruel and unusual

punishment.  On August 9, 2010, the Honorable Avern Cohn dismissed the claim against

defendant Scutt pursuant to 28 U.S.C. § 1915(e)(2)[1] because plaintiff had not stated a claim

against her upon which relief may be granted (D/E #5).  The matter comes before the court on

---

[1]28 U.S.C. § 1915(e)(2) provides, in pertinent part, that "Notwithstanding any filing fee,
or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the
court determines that . . . (B) the action or appeal . . . (ii) fails to state a claim upon which relief
may be granted".

the remaining defendants' Motion for Summary Judgment (D/E #12).  Plaintiff filed a response

in opposition to that motion (D/E #18) and defendants filed a reply to that response (D/E #20).

For the reasons discussed below, this court recommends that defendants' motion for summary

judgment (D/E #12) be **GRANTED IN PART and DENIED IN PART**.  Specifically, this court

finds that, while defendants are entitled to summary judgment on the claims against them in their

official capacities, their request for summary judgment on the claims against them in their

individual capacities is premature and plaintiff should be allowed to conduct some limited

discovery.

## II. Background

### A. Complaint

On April 2, 2010, plaintiff filed the complaint against defendants in this matter (D/E #1).

In that complaint, plaintiff alleges that, while he filed a grievance regarding water seeping

through the bottom of his cell and black mold forming on the walls on April 13, 2010, nothing

was done for more than three months.  (Complaint, ¶ 1)  Plaintiff also alleges that he

subsequently filed a number of work orders and another grievance.  (Complaint, ¶¶ 1-2)

Plaintiff further alleges that, while maintenance workers, including defendant Hayes,

caulked a shower on May 5, 2010 in order to prevent more mold, Hayes also said that he would

not clean up the mold in plaintiff's cell and plaintiff would have to clean it up himself.

(Complaint, ¶ 3)  According to plaintiff, defendant Cathcart subsequently placed a bottle of

undiluted bleach in plaintiff's cell and told plaintiff to clean the cell, despite plaintiff's protests

that he was not qualified or certified to handle hazardous chemicals.  (Complaint, ¶¶ 4-5)

Plaintiff claims that he cleaned up the black mold as ordered until he started to feel faint, at which point his cell mate took over.  (Complaint, ¶ 5)  Plaintiff also alleges that, given the toxic fumes in his cell, he requested to stay in another room during the prisoner count, but Cathcart refused that request  (Complaint, ¶ 5)  However, thirteen minutes later, another officer noticed the smell and sent plaintiff to another room while his cell aired out.  (Complaint, ¶ 6)

According to plaintiff, he was taken to health care later that day because he was feeling light-headed and having a hard time breathing.  (Complaint, ¶ 7)  Plaintiff also alleges that he has suffered nose bleeds, sinus problems and migraine headaches since that day, and that he cannot know what future medical problems may develop as a result of the mold and bleach. (Complaint, ¶¶ 8-11)

Plaintiff brings a claim alleging that defendants' actions constituted cruel and unusual punishment in violation of his rights under the United States Constitution.  (Complaint, ¶ 21) The lawsuit appears to be against defendants in both their individual and official capacities. (Complaint, p. 2)

### B.  Pending Motion for Summary Judgment

On November 18, 2010, defendants Hayes, Patino and Cathcart filed the motion for summary judgment pending before the court (D/E #12).  In that motion, those defendants argue that plaintiff's claims against them in their official capacities claims are barred by the Eleventh Amendment to the United States Constitution.  Defendants also argue that they are entitled to qualified immunity and summary judgment with respect to the claims against them in their individual capacities because no genuine issue of material fact is in dispute.

-3-

On December 17, 2010, plaintiff filed a response in opposition to defendants' motion for summary judgment (D/E #18).  In that response, plaintiff argues that the court should either defer judgment or deny defendants' motion as premature because he has not been afforded an adequate time in which to conduct discovery, especially in light of the fact that he has been transferred twice in the last month and defendants have been withholding evidence.  Plaintiff also argues that the Eleventh Amendment does not bar a suit against the state where its employees act with deliberate indifference.  Plaintiff further argues that genuine issue of material fact exist with respect to his claim.

On December 28, 2010, defendants filed a reply to plaintiff's response (D/E #20).  In that reply, defendants argue that plaintiff has failed to demonstrate why he is entitled to further discovery or why defendants' motion is untimely.

## III.  Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), which states that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

-4-

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

the moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106

S.Ct. 1348.  The opposing party cannot merely rest upon the allegations contained in his

pleadings.  Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(internal quotation omitted).

## IV.  Discussion

### A. Claims Against Defendants in Their Official Capacities

As argued by defendants, the claims against them in their official capacities are barred by

the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted
> against one of the United States by Citizens of another state, or by
> Citizens or subjects of any foreign State.

[U.S. Const. amend. XI.]  Courts have construed that language broadly and the Eleventh

Amendment generally bars suits in federal court against a state and its departments or agencies

unless the state has waived its sovereign immunity or unequivocally consented to be sued.  See

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67

(1984); <u>Skinner v. Govorchin</u>, 463 F.3d 518, 524 (6th Cir. 2006).[2]  "Whether a suit against State officials in their official capacity is deemed to be against the State depends on whether the plaintiff seeks 'retroactive' or 'prospective' relief'."  <u>Doe</u>, 21 F.3d at 736.  Retroactive relief compensates a plaintiff for a past violation of his legal rights and, while retroactive relief usually takes the form of money damages, that is not necessarily the case.  <u>See Cory v. White</u>, 457 U.S. 85, 90 n. 2, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); <u>Doe</u>, 21 F.3d at 736-737.  Where an official capacity claim is for retroactive relief, the action is deemed to be against the State whose officers are the nominal defendants.  <u>Doe</u>, 21 F.3d at 737.

In this case, plaintiff seeks redress for a past violation of his legal rights and, therefore, the suit is deemed to be against Michigan itself.  <u>Doe</u>, 21 F.3d at 737.  The State of Michigan, however, has not consented to civil rights suits in federal court.  <u>See Johnson v. Dellatifa</u>, 357 F.3d 539, 545 (6th Cir. 2004); <u>Abick v. Michigan</u>, 803 F.2d 874, 877 (6th Cir. 1986); <u>see also</u> <u>Hill v. Michigan</u>, 62 Fed. Appx. 114, 115 (6th Cir. 2003).  Therefore, to the extent plaintiff's claims against defendants are against them in their official capacities, the claims are barred by the Eleventh Amendment.

### B. Claims Against Defendants in Their Individual Capacities

---

[2]As discussed by the Sixth Circuit in <u>Ernst v. Rising</u>, 427 F.3d 351, 358-359 (6th Cir. 2005), a State's immunity comes with exceptions; the immunity does not attach if the lawsuit is not against the State or an arm of the State, the immunity does not extend to counties and similar municipal corporations, the immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law, the immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and the immunity does not apply when the Federal Government brings the lawsuit. Additionally, a State may elect to waive that immunity through legislation through its conduct in litigation.  <u>Ernst</u>, 427 F.3d at 358.  None of these exceptions are applicable in this case.

With respect to the claims against them in their individual capacities, defendants argue that they are entitled to qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001) *overruled in part by* Pearson v. Callahan, 129 S.Ct. 808, 172 L.Ed.2d 565, (2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance

understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable."  Saucier, 533 U.S. at 201.

Here, defendants only argue that they are entitled to qualified immunity and summary judgment because no genuine issue of material fact exists with respect to the issue of whether a constitutional violation occurred.

The Eighth Amendment forbids the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII..  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).  The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).  "An Eighth Amendment conditions-of-confinement claim has two elements. 'First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.'  Second, the prison official's 'state of mind [must be] one of 'deliberate indifference' to inmate health or safety.'"Spencer v. Bouchard,  449 F.3d 721, 728 (6th Cir. 2006) (quoting Farmer, 511 U.S. at 832)

Here, defendants argue that no genuine issue of material fact exist and they are entitled to summary judgment because plaintiff cannot satisfy his burden of showing that defendant Patino

-8-

was personally involved in any alleged constitutional violation or that defendants Hayes and Cathcart were deliberately indifferent to the plaintiff's health or safety.  In support of that argument, defendants primarily rely on their affidavits.  An affidavit from defendant Hayes states that, while he completed several work orders related to a leaking shower in 2009, he never observed any mold in plaintiff's cell.  (Affidavit of Jody Hayes, ¶¶ 3-4; attached as Exhibit A to Defendants' Motion)  Hayes also stated in his affidavit that, at one point, he specifically looked under plaintiff's bunk and only saw moisture mixed with black dirt. (Affidavit of Jody Hayes, ¶ 5; attached as Exhibit A to Defendants' Motion)

Defendant Patino stated in an affidavit that he was not personally involved in the actions alleged by plaintiff and that he has no knowledge of the existence of any black mold.  (Affidavit of Reynaldo Patino, ¶¶ 4-5; attached as Exhibit B to Defendants' Motion)

Defendant Cathcart stated in an affidavit that he left a bottle of bleach in plaintiff's cell for plaintiff to clean his cell with, he did not give plaintiff a mask or allow plaintiff to exit his cell during prisoner count because the Material Safety Data Sheet for the bleach did not indicate the need for a face mask or other respiratory protection for use of the product.  (Affidavit of Danny Cathcart, ¶¶ 3-5; attached as Exhibit C to Defendants' Motion)

In addition to those affidavits, defendants point to some medical records detailing plaintiff's previous history with epilepsy, migraine headaches and hypertension with elevated blood pressure readings.  Those records also indicate that, as of October 20, 2010, plaintiff's assessment was "Good" for the seizures, hypertension and late effects CVA (cerebrovascular

-9-

accident), and "Fair" for esophageal reflux.  (Medical Records; attached under seal as Exhibit D to Defendants' Motion)

In response to defendants' arguments and evidence, plaintiff requests, pursuant to Fed. R. Civ. P. 56(d)[3], a postponement of a ruling on defendants' motion for summary judgment so that plaintiff can conduct more discovery.

Pursuant to Rule 56(d), a party opposing a motion for summary judgment is allowed to state that he or she is unable to present facts essential to justify the party's opposition and, in that situation, the district court may permit further discovery so that the non-moving party can adequately oppose the motion for summary judgment.  Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).  Fed. R. Civ. P. 56(d) has been referred to as a "carefully crafted" rule that serves as a vehicle through which the non-movant meets his "obligation to inform the district court of his need for discovery" Vance ex rel. Hammons v. United States, 90 F.3d 1145, 1149 (6th Cir. 1996), and the Sixth Circuit has stressed the importance of complying with Rule 56(d)'s requirement through the use of affidavits, as opposed to briefs: "[a] reference to [Rule 56(d)] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a [Rule 56(d)] affidavit . . . and the failure to file an affidavit under [Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."  Cacevic v. City of Hazel Park, 226 F.3d 483, 488

---

[3]Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).  The change only became effective December 1, 2010, so the relevant cases all refer to 56(f).

(6th Cir. 2000) (quoting <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)).

"Beyond the procedural requirement of filing an affidavit, [Rule 56(d)] has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." <u>Cacevic</u>, 226 F.3d at 488.  <u>See also</u> <u>Wallin</u>, 317 F.3d at 564 ("[i]t is up to the party opposing the motion to state why more discovery is needed."); <u>Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.</u>, 280 F.3d 619, 627 (6th Cir. 2002) ( "[T]he non-movant must file an affidavit pursuant to Fed. R. Civ. P. [56(d)] that details the discovery needed, or file a motion for additional discovery."); <u>Good v. Ohio Edison Co.</u>, 149 F.3d 413, 422 (6th Cir. 1998) (holding that a party invoking Rule 56(d) protections must "affirmatively demonstrate ... how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact") (internal quotation marks omitted).  "Nebulous assertions that more discovery time would have produced evidence to defeat summary judgment will be unavailing." <u>Lanier v. Bryant</u>, 332 F.3d 999, 1006 (6th Cir. 2003).

In this case, plaintiff's affidavit provides, in part:

1.   At the time I filed this law suit [sic] I was at Cotton Correctional, however since being transferred to two different facilities within one month period has made it hard for me to respond properly and effectively.

2.   Discovery is essential to my claim, Defendants have purposely withheld vital information such as work orders submitted by c/o Spence.  Defendants have also

-11-

withheld several medical documents which would show the increase of illness due to black mold.

[Affidavit of John Jacobson, ¶¶ 1-2; attached as part of Plaintiff's Response]  Moreover, plaintiff's brief also states that an Officer Spence submitted numerous work orders to maintenance to have the black mold problem removed, but those work orders, along with relevant medical records, are absent from the record.

This court finds that a decision of defendants' motion for summary judgment with respect to the claims against them in their individual capacities should be postponed until plaintiff has had the opportunity to conduct discovery.  While brief, plaintiff's affidavit clearly states the need for specific discovery and what material facts he hopes to uncover.  Plaintiff needs the work orders completed by Spence and his medical records in order to demonstrate that a genuine issue exists with respect to whether a both elements of his Eighth Amendment claim.  According to plaintiff, the work orders and medical records will show that an objectively and sufficiently serious black mold problem existed.  Moreover, the work orders will show who was aware of and personally involved in the reaction to the black mold.

Similarly, plaintiff's affidavit clearly states why he has not previously discovered the information.  According to that affidavit, plaintiff has been transferred twice since filing his complaint, as also reflected in the docket sheet (D/E #10, #17) and those transfers have interfered with his ability to gain information.  Plaintiff also states that defendants have been withholding information.  Moreover, this court would note that defendants/ motion for summary

-12-

judgment was filed less than four months after the complaint was filed and less than a month after the last of the defendants was served.

Defendants quicky moved for summary judgment in this case, which they have a right to do under Fed. R. Civ. P. 56(b).[4]  Nevertheless, through his 56(d) affidavit, plaintiff has shown why that motion should be deemed premature and why the decision on defendants' motion, with respect to the claims against them in their official capacities, should be postponed until plaintiff has received all relevant work orders and all of his medical records.  Plaintiff has not identified too much necessary discovery in this case and he should be given the opportunity to conduct discovery as to those materials.

**V. Conclusion**

For the reasons discussed above, the court recommends that defendants' motion for summary judgment (D/E #12) be **GRANTED IN PART and DENIED IN PART**.  Specifically, this court finds that, while defendants are entitled to summary judgment on the claims against them in their official capacities, their request for summary judgment on the claims against them in their individual capacities is premature and plaintiff should be allowed to conduct some limited discovery.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

---

[4]Fed. R. Civ. P. 56(b) provides: "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."

-13-

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated:  January 19, 2011

---

## <u>PROOF OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 19, 2011.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan