UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN JACOBSON,

       Plaintiff,                            CIVIL ACTION NO. 10-13046

     v.                                 DISTRICT JUDGE AVERN COHN

REY PATINO, JODY HAYES,        MAGISTRATE JUDGE MARK A. RANDON
and DANNY CATHCART,

       Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 39)

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a Michigan prisoner, brought this *pro se* civil rights lawsuit under 42 U.S.C. § 1983 against four employees of the Cotton Correctional Facility: Warden Debra Scutt, Plant Superintendent Rey Patino, Maintenance Worker Jody Hayes, and Resident Unit Officer Danny Cathcart. (Dkt. No. 1, Prisoner Civil Rights Complaint).

Plaintiff alleges that water was seeping into his cell creating black mold on the bottom of the wall. (Dkt. No. 1 at ¶ 1). According to Plaintiff, maintenance caulked his shower to prevent additional mold from spreading in his cell, but Defendant Hayes required Plaintiff to clean the existing mold himself. (Dkt. No. 1 at ¶ 3). Defendant Cathcart gave Plaintiff some undiluted bleach to clean the cell, but he denied Plaintiff's request for a mask. (Dkt. No. 1 at ¶¶ 4-5). While Plaintiff became faint due to the toxic smell, Defendant Cathcart prohibited Plaintiff from remaining in another room during count time. (Dkt. No. 1 at ¶¶ 5-6). Thirteen minutes later,

another correctional officer noticed the strong odor of bleach in Plaintiff's cell and told Plaintiff to wait in another room during count time so his cell could air out. (Dkt. No. 1 at ¶ 6). As a result of the toxic fumes, Plaintiff suffered nose bleeds, congestive sinus problems, and extreme migraine headaches. (Dkt. No. 1 at ¶ 7). In addition, Plaintiff testified that Doctor Cohen will say that the black mold caused his allergies. (Dkt. No. 39; Ex. A, Jacobson Deposition Transcript Pages at 62-63). Plaintiff alleges that he was subjected to cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution. (Dkt. No. 1 at ¶ 10).

District Judge Avern Cohn dismissed Defendant Scott on August 9, 2010 pursuant to 28 U.S.C. § 1915(e)(2), because Plaintiff had not stated a claim against her upon which relief may be granted. (Dkt. No. 5).

On January 19, 2011, Magistrate Judge Virginia M. Morgan recommended that Plaintiff's claims against Defendants Patino, Hayes, and Cathcart in their official capacities be dismissed, but that Plaintiff be allowed to conduct limited discovery on his claims against Defendants Patino, Hayes, and Cathcart in their individual capacities. (Dkt. No. 21). District Judge Avern Cohn adopted Magistrate Judge Morgan's recommendation on February 28, 2011. (Dkt. No. 22).

Before the Court is Defendants Patino and Hayes' (collectively, "Defendants") Motion for Summary Judgment.[1] (Dkt. No. 39). Plaintiff filed a Response on May 3, 2012. (Dkt. No. 41). Defendants did not file a reply.

---

[1] The motion does not involve Defendant Cathcart.

For the following reasons, this Magistrate Judge **RECOMMENDS** that Defendants' motion be **GRANTED**, and that Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE**.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

## III. ANALYSIS

The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the Amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "unnecessary and wanton infliction of pain" to come within the Eighth Amendment prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and subjective test. *See Brennan*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes unnecessary and wanton infliction of pain will vary

depending on the nature of the alleged constitutional violation. *See Hudson v. McMillain*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See Hudson* v. *McMillian,* 503 U.S. 1 (1992); *Rhodes v. Chapman*, 452 U.S. 337 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. The objective component is contextually driven and is responsive to "contemporary standards of decency." *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

Under the standard articulated above, Plaintiff's allegation that Defendants required him to use bleach to clean his cell without a mask is not sufficiently serious to warrant Eighth Amendment Protection.

With regard to Plaintiff's allegation that Defendants did not timely clean the "toxic black mold" from his cell, Plaintiff's mother sent a sample of the mold to Aerobiology Laboratory where it was tested. The sample that was sent to the laboratory had been cleaned with bleach. Suzanne Blevins, the owner of Aerobiology Laboratory, testified at a deposition on August 31, 2011. Ms. Blevins presented the following testimony:

| | |
|---|---|
| **MS. BLEVINS**: | Okay. Do you want me to explain how the test was done so I can frame the results? |
| **ATTORNEY**: | Sure. Sure. |
| **MS. BLEVINS**: | Okay. The client sent in the material. We took that material and we examined it directly under the microscope, we don't allow it to grow and culture, that takes multiple days. Not all the mold that is present in any sample will always grow because they may not have moisture, et cetera. |

|   |   |
|---|---|
|   | So this is what's called in our industry a direct read. So you look at it under the microscope. |

. . .

| | |
|---|---|
| **MS. BLEVINS**: | So we saw two particular different spores. One was a Cladosporium spore and one was a colorless, an occasional. |

. . .

| | |
|---|---|
| **ATTORNEY**: | Okay. So there is either – so are these different kinds of spores that were seen or are they the same kind? |
| **MS. BLEVINS**: | No, they are different. A colorless is a category. There's thousands and thousands of spores in both the outdoor flora and the indoor flora. And the industry has about four or five categories when you can't give it an actual genus name, and that's what Cladosporium is, so you put it into categories to allow the investigator to gain information. But we still want to categorize it, and that is the category, colorless. |

. . .

| | |
|---|---|
| **ATTORNEY**: | Tell us what a Cladosporium spore is[.] And the question here, is it toxic, is that toxic black mold, Cladosporium? |
| **MS. BLEVINS**: | Cladosporium is what's called a mold. There is lots of categories in the fungal kingdom, fungi, but this particular organism is a mold. Cladosporium is the most common mold in the entire world. It is ubiquitous in every environment, every niche, every temperature range, every continent, everywhere. It is just the most ubiquitous. It starts growing in the spring and is dependent upon the geographic area. If there's not a hard freeze it never dies. In Michigan I would imagine the levels drop and then in the spring they just begin to flourish and they peak in the fall.<br><br>The purpose of fungi, of mold, is to digest and degrade organic material, so that is their job, that's why there are so many fungi. If you take a leaf there's just hundreds and hundreds of colonies on most vegetation. So it is the most common. It is commonly found indoors. |

|  | |
|---|---|
| | It's found – think of the gaskets in your refrigerator when they turn a little green. They are in bathrooms all the time. They are in water fountains, they are on food materials. They are definitely all over the outdoor of your siding, the wood. They are around window sills. |
| | When you get some moisture inside and there's a little bit of growth Cladosporium is the organism that's there. When you have an air supply, a metal air supply in a room from a mechanical system and it gets cold and there's a little bit of condensation of moisture and something grows, it is always Cladosporium. In mechanical systems, internal insulation, anything to do with a mechanical system that's internally lined, that is typically the organism that always grows. If there is lack of humidity control or the mechanical system is oversized, it's everywhere. It's, you know, it's all over your cars, it's all over your clothes, it's all over your shoes, it's all over the plants that you grow in your home. It's everywhere. |
| **ATTORNEY**: | Is it in the air that we breathe? |
| **MS. BLEVINS**: | Absolutely. And it could be – like today in Virginia, we probably could have 40,000 spores in one cubic meter of air and that would not be atypical. In October we could have 300,000 spores per cubic meter of air. |
| | . . . |
| **ATTORNEY**: | Now, are you calling this a green mold or is it a black mold? |
| **MS. BLEVINS**: | It's a green mold. When we grow it in the laboratory it's a green mold. Almost every species has an olive green color to it. It is not how the laboratory categorizes a black mold, it is considered a green mold. |
| | . . . |
| **ATTORNEY**: | I see. And what – well, tell me, then, what is the so-called toxic black mold that you hear about all the time? |

MS. BLEVINS: Well, it depends if you talk to a scientist or, you know, the public or the media. Toxic black mold is typically a genus called Stachybotrys.

. . .

MS. BLEVINS: Cladosporium is typically not classified in the black mold category at all.

ATTORNEY: Now, let me ask you about the colorless spores that were – spore or spores, there's one or more, one to five colorless spores. Is that – are colorless spores similar to Cladosporium or are they similar – or what, tell me what they are?

MS. BLEVINS: They are completely different. Cladosporium has a green spore because it's a green colony. Colorless spores could be probably one of 50 different types of fungi, none of which are classified as black mold.

. . .

ATTORNEY: Now, if I understand right, and I've done just a little bit of research on these, the black mold, the Stachybotrys fungi, is that the correct term, Stachybotrys fungi, on its spores it has a myc – is it a mycotoxin?

MS. BLEVINS: It can produce mycotoxins, yes.

ATTORNEY: Now, do Cladosporium spores produce mycotoxins?

MS. BLEVINS: No, they do not.

ATTORNEY: Now, it is the mycotoxin of the black mold, of the black molds, that is what causes people to get sick; is that right?

MS. BLEVINS: It allegedly causes people to get sick. There is no hard scientific evidence, there's no dose related exposure to say this amount gets somebody sick. Stachybotrys, the organisms that produce mycotoxin don't always produce it. It's depending upon the substrate they are growing on whether they do it or not. They can be, you know, growing on this type of material, the same organism, the same strain,

-8-

|  |  |
|---|---|
|  | you know, on this it could be producing mycotoxins and on that one, you know, it cannot be producing. |
|  | . . . |
| **ATTORNEY**: | And in here, just so if I can summarize, so the sample that was given to you shows, A, it is not toxic black mold, and, B, whatever mold was there it's there by deposition and not through – it doesn't originate from there? |
| **MS. BLEVINS**: | It does not indicate active growth because there are certain other structures we would have reported had we seen them that shows it's actively producing these spores, and those structures were not observed. |
| **PLAINTIFF**: | Yeah. One is – okay, all of those samples were taken after it was bleached and washed down with harsh chemicals, so would that have any – you know, what's the word I'm looking for, any part to your testing? |
| **MS. BLEVINS**: | When a material has been bleached we can still see the Stachy spores and we can tell that they've been bleached. So we make that note on the report that we can still see the spore and because of the shape and the size we can – because we've seen plenty of it we can tell that it's been a bleached Stachybotrys spore. So we have no trouble making that distinction, and it would reflect it on the laboratory report if we thought that there were bleached Stachybotrys spores there.<br><br>So in this case it does not appear that there were any spores present anymore and through the aggressive cleaning, that's the purpose is to remove it and just to leave, you know, whatever becomes there after the cleaning. |

(Dkt. No. 39; Ex. C, Blevins Deposition Transcript Pages at 12-21).

While Plaintiff says Ms. Blevins testified that her results would be different if the room was infected with black mold and cleaned with bleach (Dkt. No. 41 at 2), Plaintiff does not attach this portion of Ms. Blevins testimony. Further, based on the testimony that was presented, this

Magistrate Judge is satisfied that no "toxic black mold" was present in Plaintiff's cell before or after Plaintiff cleaned his cell with bleach.

Plaintiff's allegation is not sufficiently serious to warrant Eighth Amendment Protection, and his Eighth Amendment claim against Defendants must be dismissed.

## IV.     CONCLUSION

For the reasons stated above, this Magistrate Judge **RECOMMENDS** that Defendants' motion be **GRANTED**, and that Plaintiff's claims against Defendants be **DISMISSED WITH PREJUDICE**.  The only remaining claim is Plaintiff's claim against Defendant Cathcart in his individual capacity.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                                      s/Mark A. Randon
                                                      MARK A. RANDON
                                                      UNITED STATES MAGISTRATE JUDGE

Dated:  July 31, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 31, 2012, by electronic and/or first class U.S. mail.*

                                                      *s/Melody R. Miles*
                                                     *Case Manager to Magistrate Judge Mark A. Randon*
                                                     (313) 234-55420